IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RONNIE WALKER, | ) | |
| | ) | Case No. 1:03-CV-02458 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Ann Aldrich |
| | ) | |
| OHIO DEPARTMENT OF REHABILITATION AND CORRECTIONS, LORAIN CORRECTIONAL INSTITUTION, et al., | ) ) ) | Magistrate Judge Nancy A. Vecchiarelli |
| | ) | MEMORANDUM AND ORDER |
| Defendants. | ) ) | |

This is a civil rights case in which Ronnie Walker ("Walker") accuses the Ohio Department of Rehabilitation & Corrections, Lorain Correctional Institution ("ODRC") of race discrimination under both Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000(e) *et seq.* and 42 U.S.C. § 1981, and the defendant Warden Linda Thomas (the "Warden") of deprivation of rights under 42 U.S.C. § 1983. Now before the court is the ODRC's and the Warden's motion for summary judgment [Docket No. 21]. For the following reasons, the court grants the motion for summary judgment, enters judgment in favor of the ODRC and the Warden on all claims, and dismisses the case.

**I.    Background**

Walker began his employment at the ODRC in September 1995 as a Corrections Officer ("CO") at the Lorain Correctional Institution ("LCI"). On October 14, 2001, Walker became involved in an altercation with inmate Craig Thomas ("Thomas") in which Walker and Thomas exchanged punches. As Thomas, who was handcuffed from behind, was being escorted from the scene, Walker approached Thomas and, with an open hand, struck Thomas in the back of the head. Walker claims that his action was in response to Thomas allegedly calling him a derogatory name and spitting in his face. Walker was

immediately placed on paid administrative leave by the Warden, pending further investigation. Defendants claim that based on an investigatory report and the finding of just cause for discipline by a pre-disciplinary hearing officer, the Warden terminated Walker from his employment as a CO at the ODRC effective December 13, 2001. Prior to this incident, Walker had been disciplined once for failing to provide a physician's certificate, but had never been previously implicated in any use of force or excessive force incident. Walker claims that his termination was unjustified, excessive and that similarly situated white COs who were involved in more serious altercations resulting in severe injuries to inmates, and who had been found to have used excessive force, received lesser degrees of discipline.

## II. Discussion

### A. Standard of Review

Under Rule 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986); *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004).

If the movant succeeds, the burden then shifts to the nonmoving party to demonstrate the existence of a material dispute as provided in Rule 56(e):

> [a]n adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986).  Parties opposing summary judgment must go beyond the pleadings and produce some type of evidentiary material in support of their position.  *See Celotex,* 477 U.S. at 324.

In determining whether a genuine issue of material fact exists, this Court must view the evidence in a light most favorable to the nonmoving party.  *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970); *Hamby v. Neel*, 368 F.3d 549, 556 (6th Cir. 2004);  *Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000).  A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson,* 477 U.S. at 248.  Determination of whether an issue is "genuine" requires consideration of the applicable evidentiary standards.  Thus, in most civil cases, the Court must decide whether the evidence is such that "reasonable jurors could find by a preponderance of the evidence that the [nonmoving party] is entitled to a verdict" or whether the evidence is "so one-sided that [the moving party] must prevail as a matter of law."  *Id.* at 252.  Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.

**B.     Count One: Title VII and 42 U.S.C. § 1981 Claims Against the ODRC**

Title VII provides that it is an unlawful employment practice for an employer to discriminate on the basis of race.  42 U.S.C. § 2000e-2(a).  Title 42 U.S.C. § 1981 prohibits intentional race discrimination in the making and enforcing of contracts involving both public and private actors. However, the Eleventh Amendment states that "the Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  Because Walker

primarily seeks retrospective relief from the ODRC in the form of back pay and other damages, his Section 1981 claim against ODRC is barred by the Eleventh Amendment, but his Title VII claim is not. *Foulks v. Ohio Dep't of Rehabilitation and Correction*, 713 F.2d 1229, 1232-33 (6th Cir. 1983).

Walker must carry the initial burden under the statute of establishing a prima facie case of racial discrimination to support his Title VII claim. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If a prima facie case is established, the burden shifts to the ODRC to articulate legitimate, non-discriminatory reasons for its actions. *Id.* Finally, Walker must be afforded an opportunity to show that the ODRC's stated reasons are merely a pretext. *Id.* A plaintiff may establish a prima facie case by presenting credible, direct evidence of discriminatory intent. *Mitchell v. Toledo Hospital*, 964 F.2d 577, 582 n.4 (6th Cir. 1992). If direct evidence is not available, the plaintiff may alternatively introduce circumstantial evidence that would allow an inference of discriminatory treatment by showing: (1) that he is a member of a protected class; (2) that he was qualified for the job and he did it satisfactorily; (3) that, despite his performance, he suffered an adverse employment action; and (4) that he was replaced by a person outside of the protected class or was treated less favorably than a similarly situated individual outside of the protected class. *Johnson v. Univ. of Cincinnati,* 215 F.3d 561, 572-73 (6th Cir. 2000). Walker, an African-American who continuously performed his duties as a CO for six years before his termination, satisfies the first three prongs of the test for inferring race discrimination. The question is whether Walker can carry his burden of proving that he was treated less favorably than a similarly situated individual outside of the protected class.

To compare his treatment to that of non-minority employees, Walker must show that the "comparables" are similarly situated in all respects. *Mitchell*, 964 F.2d at 583 (quoting *Scotts v. Memphis Fire Department*, 858 F.2d 289, 296-98 (6th Cir. 1988)). Thus, to be deemed "similarly

situated," the individuals with whom Walker seeks to compare his treatment must have dealt with the same supervisor, been subject to the same standards and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the ODRC's treatment of them for it. *Id.* Walker compares himself to four white ODRC employees. However, in applying the above standard to this case, it is evident that Walker fails to identify a similarly situated employee outside of the protected class who was treated more favorably than he. The four white ODRC employees that Walker compares himself to differ from him in significant ways.

Walker cites an incident occurring in October 1999, involving a white CO, Anthony Weeda ("Weeda"). Weeda was found, by a Use of Force Committee ("UFC") to have used unjustified and unnecessary force in pushing an inmate, whose hands were cuffed behind his back, to the floor. Weeda was not fired but only orally reprimanded and remains employed at LCI. While it seems that Walker and Weeda were treated unequally, there are several differences between the two situations. First, at the time of Weeda's incident, Weeda was under the direction of a different supervisor.[1] In *Seay v. Tennessee Valley Authority*, the Sixth Circuit stated that the "same supervisor" criterion has never been read as an inflexible requirement, and emphasized the importance of "making an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee. 339 F.3d 454, 480 (6th Cir. 2003) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 353 (6th Cir. 1998)). However, the *Seay* court was speaking specifically to a situation where a plaintiff whose job responsibilities are unique to his or her position, and will never be able to successfully establish a prima facie case absent direct evidence of discrimination. *Id.* Here, the relevance of the "same supervisor" is particularly important in that a warden who follows the

---

[1]Linda Thomas served as Warden of LCI from July 8, 2001 until May 31, 2003.

ODRC's standards for discipline cannot be found to have discriminated against an employee based on a comparison to a past warden who may not have followed proper procedure. With respect to Walker, Warden Linda Thomas followed the ODRC's policy for abuse of an inmate, which provides for removal as the only means of discipline for a first-time offender. In addition to having different supervisors, the court is unable, given the evidence presented, to determine whether Walker and Weeda were disciplined according to the same set of standards. The ODRC Standards of Employee Conduct produced by Walker has an effective date of October 21, 2001. Weeda's incident occurred in 1999. Nowhere is it indicated that the standards to which Weeda was held at the time of his incident were the same standards applied to Walker's incident. The court therefore finds that Weeda and Walker are not "similarly situated."

Walker also cites an incident that occurred in May 1998 involving Captain Dana Darling ("Darling"). Darling, who is white, was found by the Use of Force Committee ("UFC") to have permitted excessive use of force by three white COs who applied pepper spray to an inmate who was laying face down on the ground, handcuffed behind his back. Walker points to the fact that neither Darling nor any of the three white COs were fired and that Darling only suffered a temporary demotion to CO in his attempt to show that Darling was treated less severely than Walker himself. Walker claims that Darling is "similarly situated" to himself because he was charged with the care and supervision of the inmates at LCI and was subject to the identical set of standards and discipline contained in the ODRC Standards of Employee Conduct. However, Darling and Walker were not disciplined by the same supervisor and for the reasons stated above, cannot be said to have been "similarly situated." While this fact alone precludes Walker from using Darling as a "comparable," Darling also was a

-6-

Captain, not a CO like Walker. Therefore, the court finds that Darling and Walker are not "similarly situated."

Walker comes closer to identifying a similarly situated non-minority employee at the ODRC in citing an incident which occurred in May 2002 involving white CO William Flesch ("Flesch"). Flesch was involved in a use of force incident with a handcuffed inmate who had refused to obey orders given by Flesch. Flesch contends that in an attempt to avoid being spat upon by the inmate, he spun the inmate away from him, causing the inmate to fall to the floor face first, resulting in the inmate suffering a laceration beside his left eye. Here, both Walker and Flesch were under the direction of the same supervisor at the time of their respective incidents. However, the decision made by Warden Thomas not to discipline Flesch for a Rule 42 violation was fully supported by the Investigation Report prepared by Institutional Investigator Christopher Monyak ("Monyak"). Monyak also prepared the Investigation Report in the Walker incident. In his report regarding the Flesch incident, Monyak describes major inconsistencies evidenced by his interviews with inmates witnessing the incident. He expresses concern over these inconsistencies which would be weaknesses in a case calling for the discipline of Flesch. Monyak specifically states that "we would [be] foolish to proceed with discipline." On the other hand, Monyak's Investigation Report in the Walker incident states that "the evidence that Walker assaulted inmate Thomas is overwhelming" and "the amount of force used by Walker was excessive by any measure." The inconsistencies encountered in an investigation of the Flesch incident are circumstances which distinguish the decision by the Warden to refrain from disciplining Flesch while terminating Walker. Walker and Flesch were therefore not "similarly situated."

Finally, Walker points to white CO David Carlton ("Carlton") who on December 28, 2001, was accused of twice assaulting an inmate while escorting him to segregation, as a similarly situated

employee who was treated in a more favorable manner. Carlton, who struck an inmate in the face and stomach while the inmate's hands were handcuffed behind his back, was charged with abusing an inmate and was terminated by Warden Thomas in accordance with the ODRC Standards of Employee Conduct. As a result of subsequent arbitration proceedings, Carlton was returned to his position following a bench decision and last chance agreement. Walker contends that Carlton's reinstatement was due to mutual agreement between Carlton and the ODRC and not as the result of an arbitrator's award. However, the evidence indicates that a bench decision and award was issued when the arbitrator determined that Carlton was not terminated for just cause and the arbitrator thus ordered Carlton into a last chance agreement, returning him to his former position. The Warden was consistent in her actions in terminating both Walker and Carlton for abuse of inmate infractions. Carlton was reinstated to his former position by an arbitrator's award and not by the Warden. Walker therefore fails on the fourth prong of the test for inferring discrimination in that he has failed to show how Carlton was treated more favorably by the ODRC and the Warden even though Walker and Carlton were otherwise "similarly situated."

Walker thus has failed to carry his initial burden of proving that he was treated less favorably than a similarly situated person outside of the protected class. Therefore, his Title VII claim against the ODRC fails as a matter of law.

**C.      Count Two: 42 U.S.C. § 1983 Claim Against the Warden**

In his Section 1983 claim, Walker accuses the Warden of violating the Equal Protection Clause of the Fourteenth Amendment by treating Walker more severely than similarly-situated non-minority employees. The Warden claims that she is immune from this claim under both the qualified immunity doctrine and the Eleventh Amendment. Under qualified immunity, government officials performing

-8-

discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Flagner v. Wilkinson*, 241 F.3d 475, 480 (6th Cir. 2001) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The Eleventh Amendment prevents a federal court from entertaining a suit brought by a citizen against his own state. *Wolfel v. Morris*, 972 F.2d 712, 718 (6th Cir. 1992). A suit for damages against a state official in his or her official capacity cannot be maintained pursuant to Section 1983. *Id.* A suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. *Id.* However, neither qualified immunity nor the Eleventh Amendment are a bar to injunctive relief against prison officials in their official capacities. The defense of qualified immunity protects officials from individual liability for money damages but not from declaratory or injunctive relief. *Flagner*, 241 F.3d at 483. Under the Eleventh Amendment, a state official in his or her official capacity, when sued for injunctive relief, would be a person under Section 1983, because official-capacity actions for prospective relief are not treated against actions against the state. *Wolfel,* 972 F.2d at 719. Although the language of the complaint is ambiguous, in viewing the complaint in a light most favorable to Walker, it seems that the only relief Walker seeks from the Warden is an injunction ordering his immediate reinstatement to his employment as a CO for the ODRC, and prohibiting the Warden from discriminating and retaliating against Walker on the basis of race. Therefore, the Warden is not immune to Walker's Section 1983 claim under qualified immunity or the Eleventh Amendment.

The showing that a plaintiff must make to recover in an Equal Protection claim under § 1983 mirrors that which must be made in a disparate treatment claim under Title VII. *Gutzwiller v. Fenik*, 860 F.2d 1317, 1325 (6th Cir. 1988). Under both statutes, the plaintiff must establish by a

preponderance of the evidence that he was a victim of intentional or purposeful discrimination. *Id.* The Sixth Circuit has stated that a plaintiff can meet the required showing race discrimination in the public employment context by either direct evidence of discrimination or alternatively, through indirect evidence using the *McDonnell Douglas* framework. *Weberg v. Franks*, 229 F.3d 514, 523 (6th Cir. 2000). Since Walker cannot establish a *prima facie* case of racial discrimination under the *McDonnell Douglas* framework as discussed above, his Section 1983 claim against the Warden likewise fails.

### III. Conclusion

For the foregoing reasons, the court grants the motion for summary judgment [Docket No. 21], enters judgment in favor of the ODRC and the Warden on all claims, and dismisses the case. This order is final and appealable.

IT IS SO ORDERED.

                                                       /s/ Ann Aldrich  
                                                      ANN ALDRICH  
                                                      UNITED STATES DISTRICT JUDGE

**Dated: May 16, 2006**